**STATE of Missouri,**
**Plaintiff-Respondent,**

**v.**

**Liudas Joseph LEIPUS,**
**Defendant-Appellant.**

**No. 47003.**

Missouri Court of Appeals,
Eastern District,
Division Four.

July 3, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 28, 1984.

Richard H. Sindel, Clayton, for defend-ant-appellant.

John Ashcroft, Atty. Gen., Janet E. Pa-pageorge, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GAERTNER, Presiding Judge.

Appellant was found guilty by a jury of forcible rape, § 566.030, RSMo 1978, and sodomy, § 566.060, RSMo 1978, and was sentenced to consecutive terms of seven years for each of the two counts. On appeal appellant advances four points of error: 1) failure of the trial court to grant his motion to dismiss for violation of the speedy trial act, § 545.780, RSMo 1978; 2) error in admitting hearsay testimony of an out-of-court identification; 3) error in over-ruling his motion to strike a venireman for cause; 4) error in giving the hammer in-struction, MAI–CR2d 1.10, after eight hours of jury deliberation.

The evidence adduced by the prosecution was that the appellant had attended a "Su-per Bowl" party at a residence in St. Louis County. Thirty to thirty-five people were at the party, most of whom watched the football game in the basement, while a few young children played upstairs. Frequent-ly, adults would come upstairs to the kitch-en or bathroom. At some point appellant took the victim, a ten-year old girl, into a bedroom and told her to take down her pants. She refused. After he threatened to slap her and to put her in a foster home, she acquiesced. He then raped and orally sodomized the girl. During the attack the victim's seven-year old brother entered the room. Appellant directed similar foster home threats at the boy and he left. The girl told no one of the incident at the time and resumed playing with the other chil-dren.

Sixteen days later, the girl's step-father reported to her mother that the victim had told him about the incident. Police were notified and the girl was examined at St. Louis County Hospital. The examination revealed no sign of recent trauma, but there was an irregularity of the hymen consistent with, but not conclusive of, sexual intercourse at some indefinite earlier time. The victim's mother noticed blood on her daughter's underpants when doing the family laundry. However, this discovery was not made until four days after the police had been notified and twenty days after the incident. She washed the underpants and did not say anything about this to her daughter. She separated from the victim's step-father after charging him with abuse of her son.

Appellant admitted being at the party and playing games with the children, but denied molesting the victim. His girlfriend testified that the victim's mother telephoned her three times and spoke to her in person on one occasion after appellant had been arrested. In this conversation the mother stated her husband, the victim's step-father, had forced her to make the charges against appellant and that she would drop the charges in return for money.

After eight hours of deliberation the jury reported a 10–2 deadlock. The trial court gave MAI–CR2d 1.10 and the jury, one hour later, returned a verdict of guilty on both counts.

Dispositive of this appeal is appellant's challenge to the denial by the trial court of his motion to strike a venireman for cause. The prospective juror, a corrections officer of the City of St. Louis Medium Security Institution, acknowledged his familiarity with prosecutors, defense attorneys and accused persons. On interrogation by appellant's attorney he responded that he might find it very difficult to listen to the evidence and to judge the case on the facts. The trial court then intervened in the interrogation, giving an extended explanation of trial procedure and juror responsibility to render a fair and impartial verdict. The court then asked the corrections officer:

Mr. Wines, am I misunderstanding you? Are you saying because of your experience working in the system and with the State, that you feel you won't be able to do that; that you already have a preconceived set of ideas that's going to interfere with your listening to the evidence in this case?

MR. WINES: It's a possibility.

No further inquiry was made of this venireman.

 It is well settled that a defendant is entitled to a full panel of qualified veniremen from which to make his allotted peremptory challenges. *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983). It is equally well-established that denial of a defendant's legitimate request that a juror be stricken for cause constitutes reversible error. *State v. Engleman*, 634 S.W.2d 466, 471 (Mo.1982).

 In determining the qualifications of a venireman, the trial court is vested with wide discretion, and its ruling on a motion to strike "will not be disturbed [on appeal] absent a clear abuse of discretion and real probability of injury to the complaining party." *State v. Smith*, 649 S.W.2d at 422. In spite of this discretion, a more searching appellate review is justified when the trial court does not independently examine a juror who expresses doubt as to his ability to be fair and impartial. *State v. Williams*, 643 S.W.2d 832, 834 (Mo.App. 1982); *State v. Ealy*, 624 S.W.2d 490, 493 (Mo.App.1981); *State v. Carter*, 544 S.W.2d 334, 337 (Mo.App.1976).

 This searching review is necessary in this case. The trial court did lecture the prospective jurors on setting aside preconceived notions and also asked the challenged venireman specifically if he had a preconceived set of ideas which would affect his impartiality. This was a critical point of the trial court's inquiry, yet the judge did not inquire further after Mr. Wines answered, "It's a possibility." The trial court's failure to take the necessary

steps to resolve the doubt created by the challenged venireman's equivocal answer constitutes reversible error.

Although deferential, Missouri courts are not unwilling to find abuse of discretion in jury selection situations. In *State v. Ealy*, 624 S.W.2d at 493–94, an attorney asked a potential juror if he would be more likely to believe a police officer than another witness, to which the venireman responded, "probably." The trial judge did not inquire further, and his denial of the challenge for cause was reversible error: "The record in this case thus discloses a close question and one where the *possible bias* of a juror towards the testimony of a policeman could very well have had an effect upon the deliberations of the jury." *Id.* at 494. (emphasis added).

Similarly, in *State v. Carter*, 544 S.W.2d at 336–37, the challenged venireperson was a former patrolman who stated there was a *possibility* he might tend to favor police officers' testimony. The trial judge took no steps to elaborate on this possibility, and we held defendant's challenge for cause should have been sustained. *Id.* at 337.

In *State v. Lovell*, 506 S.W.2d 441, 442–43 (Mo. banc 1974), a potential juror felt that "the policemen's hands were tied," and also expressed that he might not be able to abide by the standard of reasonable doubt. After the juror expressed concern about being able to give the defendant a fair trial, the judge asked this question:

> The only question in this case, Mr. Black, is whether or not you can give defendant a fair trial. Is there any reason why you cannot hear the evidence in the case and go by the instructions of the Court in deciding whether or not this defendant is guilty of the crime charged? ... Is there any reason why you cannot give this defendant a fair and impartial trial under the evidence and the law?
>
> JUROR BLACK: I don't think so.

*Id.* at 443.

Despite the trial court's further inquiry, the Missouri Supreme Court found reversible error because the only basis for the trial court's decision that the juror could serve impartially was "the conclusion or opinion of the juror himself." *Id.* at 444. The Supreme Court evaluated the juror's entire examination and not merely his final response to the judge's question.

When a prospective juror ultimately states unequivocally that he can be impartial, and when the entirety of the voir dire makes it reasonable for the court to believe the potential juror, the court's exercise of discretion on a motion to strike for cause should not be disturbed on appeal. *State v. Hunt*, 663 S.W.2d 336, 338 (Mo.App.1983). However, this rule has no application where the answers of the prospective juror are equivocal and disclose uncertainty about his ability to be impartial. Much less equivocation by a venireman than was shown here was held to require reversal in *State v. Williams*, 643 S.W.2d 832 (Mo. App.1982). There a former civilian employee of the police department expressed his inclination to give greater credence to police officer testimony than to others. Despite responses that he would *try* to set aside his feeling, that he *believed* he could equally judge police and civilian testimony and did *not* believe he would use a different standard in judging such testimony, the possibility of bias caused this court to conclude the trial court had abused its discretion in denying a challenge for cause. We noted that although former affiliation with law enforcement, standing alone, would not be grounds to disqualify a juror, such affiliation when combined with responses which lacked an unequivocal conviction of an ability to accord both sides a fair trial mandated reversal. *Id.* at 834. Here we are faced with a present affiliation with law enforcement and an unqualified expression of doubt regarding the venireman's ability to be impartial. "To protect the defendant's right to a jury free from objectively demonstrated and subjectively sensed partiality, he must be afforded a full panel of qualified veniremen from which to make his allotted peremptory challenges." *State v. Woods*, 662 S.W.2d 527, 530 (Mo.App.1983), quoting *State v. Smith*, 649 S.W.2d 417,

421–422 (Mo. banc 1983). Appellant in the instant case was denied a full panel of qualified veniremen free from even "subjectively sensed partiality." Accordingly, we are constrained to remand this cause for a new trial.

■ Two other matters asserted by appellant must be addressed. His contention of error in the denial of his motion to dismiss for violation of the speedy trial act, § 545.780, RSMo 1978, and the Missouri and the United States Constitutions because of the 311 day delay between arraignment and trial is without merit. The legal file reflects that many of the continuances granted in this case were caused by, joined in or consented to by the appellant himself. There is no showing that the majority of the delays were occasioned by the State. Furthermore, the recent decision of the Missouri Supreme Court in *State v. Collins*, 669 S.W.2d 933 (Mo. banc 1984) is dispositive:

> The speedy trial act, despite the requirement of detailed findings, has no teeth. Dismissal of an indictment or information is purely a matter for the discretion of the trial judge. One who would challenge this exercise of discretion must meet the very substantial burden of demonstrating an abuse of discretion. Counsel should realize that success on appeal is very unlikely if the trial judge declines to dismiss the case.

*Id.* at 935.

■ The 311 day delay between appellant's arraignment and trial also did not violate his right to a speedy trial under the Mo. Const. Art. I, § 18(a) or the United States Constitution. Whether delay in completing a prosecution amounts to an unconstitutional deprivation of rights depends upon the circumstances. *Pollard v. United States*, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393 (1957). A balancing test is utilized, in which the conduct of the prosecution and the accused are weighed. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *State v. Hogshooter*, 641 S.W.2d 820, 823 (Mo.App.1982). Some elements to consider

are 1) length of delay, 2) reason for delay, 3) defendant's assertion of his right, and 4) prejudice to the defendant. 641 S.W.2d at 823. Also, to be unconstitutional the delay must be purposeful and oppressive. 352 U.S. at 361, 77 S.Ct. at 486.

The trial court in this case granted many continuances at the request of appellant. There was no evidence of purposeful or oppressive delay by the State. The long delay between arraignment and trial is at least as attributable to appellant as to the State. This point is without merit.

■ One other point asserted on appeal which may recur at a second trial involves the admission of hearsay evidence relating to the identification of appellant. The victim's step-father accompanied the victim and her brother to a lineup conducted at the police station. The step-father did not testify at the trial and the record indicates his whereabouts are unknown. Over objection, the trial court permitted a police officer to testify that the step-father identified the appellant as being present at the party and being nicknamed "Louie." The State concedes that the admission of this testimony was improper but argues that it was not prejudicial. We need not address the question of prejudice. The evidence is improper and should not be admitted at the second trial.

Appellant's final contention regarding the giving of the "hammer" instruction after eight hours of deliberation is not likely to recur and need not be addressed.

The judgment of conviction is reversed and the cause is remanded for a new trial.

SMITH and STEPHAN, JJ., concur.